UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT PIKEVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | CRIMINAL NO. 7:12-5-KKC-HAI-3 |
| **Plaintiff,** | |
| **v.** | **OPINION AND ORDER** |
| JERMAINE ST. CLAIR LITTLES, | |
| **Defendant.** | |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on the Defendant's second motion for compassionate release related to coronavirus concerns. (DE 420.) For the reasons stated below, the defendant's motion is **DENIED**.

Defendant pleaded guilty to one count of conspiracy to distribute oxycodone. (DE 243.) He was sentenced to 139 months imprisonment, with 30 months to run concurrently, and the remainder to run consecutively, with the undischarged sentence imposed by the United States District Court for the Middle District of Florida. (DE 246.) On April 14, 2020, the defendant filed his first motion for compassionate release. (DE 414.) Defendant's first motion for compassionate release was denied by the Court because he failed to show that he met either of the mandatory conditions of 18 U.S.C. § 3582(c)(1)(A). (DE 418.)

Defendant has filed another motion for compassionate release. This motion appears to assert that he has met one of the two conditions. Defendant asserts that he requested compassionate release from the warden of his facility and more than thirty days have passed. Defendant represents that he has served 79.8 percent of his sentence. He additionally states that he has no disciplinary reports and has earned his GED. He states that coronavirus is

1

dangerous and affecting all populations.  He asserts that the prison environment is dangerous and that he is vulnerable in prison.

Prior to the First Step Act, PL 115-391, 132 Stat 5194 (Dec. 21, 2018), the court could not grant a motion for compassionate release unless the motion was filed by the director of the Bureau of Prisons (BOP). *See* 18 U.S.C. § 3582(c)(1)(A) (2017). If the defendant himself filed such a motion, the court could not grant it.

The First Step Act amended § 3582(c)(1)(A) to allow the court to grant a motion for compassionate release filed by the defendant himself "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ." 18 U.S.C.A. § 3582(c)(1)(A); PL 115-391, 132 Stat 5194 § 603 (Dec. 21, 2018).

The Sixth Circuit recently determined that the occurrence of one of the two events mentioned in the statute is a "mandatory condition" to the Court granting relief.  *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020). If the government "properly invoke[s]" the condition, the Court must enforce it. *Id.* at 834. This is because the statute says that a "court may not" grant compassionate release unless the defendant files his motion after one of the two events has occurred. *Id.* Further, the Sixth Circuit ruled that this Court cannot find exceptions to the mandatory condition. *Id.* at 834 ("Nothing in § 3582(c)(1)(A) suggests the possibility of judge-made exceptions.")

The Court ordered the government to respond to the defendant's second motion for compassionate release.  (DE 422.)  The government argues that the Court cannot grant compassionate release in his case because he has not exhausted his administrative remedies. (DE 424.) This is a proper invocation of the mandatory condition. *Id.* (finding no waiver or forfeiture of the mandatory condition where the government timely objected to defendant's

"failure to exhaust.") The next issue then is whether the defendant has met the mandatory condition to this Court's ability to grant him compassionate release.

District courts across the country have grappled with the language of the First Step Act to determine precisely what a prisoner has to do before he can successfully bring his own motion for compassionate release in federal court. This Court has done the same, and, like the Eastern District of Arkansas, it has emerged uncertain of anything except: "(1) the statute would benefit from clarifying amendments in Congress and (2) this Court will not be the last word on the question." *United States v. Smith*, No. 4:95-CR-00019-LPR-4, 2020 WL 2487277, at *7 (E.D. Ark. May 14, 2020).

It is clear that, if the warden fails to act on the defendant's request for a compassionate-release motion, the defendant can bring his own motion in federal court after waiting 30 days from the date the warden received his request. The uncertainty arises when a warden denies a defendant's request to file a motion for compassionate release. Can the defendant still come directly to court for relief after the lapse of 30 days from the warden's receipt of the request? Or is the defendant required to first "fully exhaust[] all administrative rights to appeal" the denial? If the defendant must first "fully exhaust" his administrative remedies, must he pursue those remedies until he reaches a final decision? Or is he required to pursue those remedies for only the 30-day period before proceeding to federal court, no matter the status of the administrative procedure?

Courts have come to different conclusions on these issues. In *Smith*, the Eastern District of Arkansas determined that the statute provides only one path to federal court when a warden denies a defendant's request for a compassionate-release motion. Before filing a motion in court, the defendant must fully exhaust his administrative remedies. *Smith*, 2020 WL 2487277, at *9. Other courts, however, have determined that the statute grants a defendant two alternative paths to federal court after the warden denies his request for a

compassionate-release motion. In *United States v. Haney*, the Southern District of New York determined that "the statute does not necessarily require the moving defendant to fully litigate his claim before the agency (*i.e.*, the BOP) before bringing his petition to court." *United States v. Haney*, No. 19-CR-541 (JSR), 2020 WL 1821988, at *3 (S.D.N.Y. Apr. 13, 2020). "Rather, it requires the defendant *either* to exhaust administrative remedies *or* simply to wait 30 days after serving his petition on the warden of his facility before filing a motion in court." *Id*.

Fortunately, this Court has some guidance from the Sixth Circuit. In *Alam*, the court repeatedly interprets the statute as giving defendants two alternative tracks to federal court. "[P]risoners who seek compassionate release have the *option* to take their claim to federal court within 30 days, no matter the appeals available to them." *Alam*, 960 F.3d at 834 (emphasis added). As the Sixth Circuit views it, the statute "imposes a requirement on prisoners before they may move on their own behalf: They must 'fully exhaust[ ] all administrative rights' *or else* they must wait for 30 days after the warden's 'receipt of [their] request.'" *Id*. at 833 (emphasis added) (quoting 18 U.S.C. § 3582(c)(1)(A)). "If the Director of the Bureau of Prisons does not move for compassionate release, a prisoner may take his claim to court only by moving for it on his own behalf. To do that, he must 'fully exhaust[ ] all administrative rights to appeal' with the prison *or* wait 30 days after his first request to the prison." *Alam*, 960 F.3d at 833–34 (6th Cir. 2020) (emphasis added) (quoting 18 U.S.C. § 3582(c)(1)(A)). The court further clarified that, for those prisoners who choose to "pursue administrative review," they are not required to complete it before coming to federal court. *Id*. at 836. "[P]risoners have the option to go to federal court" if they pursue administrative review and it "comes up short (*or if 30 days pass*)." *Id*. (emphasis added).

With his second motion for compassionate release, the defendant attaches a letter addressed to the warden of his facility requesting compassionate release. (DE 420-2.) The letter is dated April 25, 2020. His motion for compassionate release was not filed until July 6, 2020. Thus, more than thirty days have passed since the warden's receipt of the defendant's request. Accordingly, the Court considers the defendant's motion on the merits.

The compassionate release statute permits this Court to "reduce the term of imprisonment" and also "impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment." 18 U.S.C. § 3582(c)(1)(A). Under the applicable provision of § 3582(c)(1)(A), however, the Court may grant this relief only if it finds that "extraordinary and compelling reasons warrant such a reduction" and the "reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i).

The statute does not define "extraordinary and compelling." Nevertheless, the policy statement by the Sentencing Commission applicable to § 3582(c)(1)(A) sets forth the circumstances under which extraordinary and compelling reasons exist for modifying a sentence. One of these is the medical condition of the defendant. However, the defendant must be suffering from a "terminal illness" or he must be suffering from a serious physical or mental impairment "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S. Sentencing Guidelines Manual § 1B1.13 cmt. n.1. The statement defines terminal illness as a "serious and advanced illness with an end of life trajectory … Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia." U.S. Sentencing Guidelines Manual § 1B1.13 cmt. n.1.

Defendant does not assert that he has any such illness. Nor does he assert that he has any impairment that has diminished his ability to provide self-care within the prison

5

environment.  Instead, Defendant appears to assert that other reasons support his release. (DE 420.)

The policy statement also has a catchall provision, which provides that undefined "other reasons" may exist that constitute extraordinary and compelling reasons to modify a sentence.  Such reasons, however, are to be "determined by the Director of the Bureau of Prisons."  U.S.S.G. § 1B1.13 n. 1(A)-(D).  Thus, this Court has no authority to find "other reasons" that may justify a sentence reduction beyond those delineated in the policy statement.

The Sentencing Guidelines have not been amended since the passage of the First Step Act.  For this reason, some courts have determined that the policy statement is inapplicable, at least to the extent that it provides that only the BOP director can find "other reasons" justifying a sentence reduction.  *See United States v. Maumau*, No. 2:08-CR-00758-TC-11, 2020 WL 806121, at *3 (D. Utah Feb. 18, 2020) (citing cases).  These courts have concluded that finding the BOP still has sole authority to determine whether "other reasons" justify a reduction is inconsistent with the First Step Act, "which was enacted to further increase the use of compassionate release and which explicitly allows courts to grant such motions even when BOP finds they are not appropriate."  *Id*. at *2 (D. Utah Feb. 18, 2020) (quoting *United States v. Beck*, 425 F. Supp. 3d 573, 579 (M.D.N.C. 2019)).

The Court finds more persuasive the analysis in *United States v. Lynn*, No. CR 89-0072-WS, 2019 WL 3805349, at *2 (S.D. Ala. Aug. 13, 2019).  There, the court noted that, by its plain language, § 3582(c)(1)(A), even after amendment by the First Step Act, requires that any sentence reduction by a court be "consistent with applicable policy statements issued by the Sentencing Commission."  *Id*.

Further, finding that the BOP still has sole authority to determine the "other reasons" that justify a sentence reduction is not inconsistent with the First Step Act's goal of

increasing the use of compassionate release. The Act achieves this goal simply by granting defendants the ability to move for compassionate release on their own. This change alone "ensures that a greater volume of [compassionate release] motions (not just those BOP agrees are meritorious) will be presented to the courts." *Id*. Many defendants' motions for compassionate release will invoke the specific provisions of the policy statement rather than the catchall provision. *Id*. "There is thus no tension between a legislative purpose to 'increase[e] the use' of compassionate release and a policy statement providing for BOP to make the determination as to one kind (out of five) of extraordinary and compelling reasons for such release." *Id*.

Congress has specifically directed that the Sentencing Commission, not the courts, promulgate "general policy statements regarding … the sentencing modification provisions" in § 3582(c). 28 U.S.C. § 994(a)(2)(C). Further, Congress has specifically directed that, in the policy statement for § 3582(c)(1)(A), it is the Commission that "shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." *Id*. § 994(a)(2)(t). The Court agrees with the conclusion in *Lynn* that, "[i]f the policy statement needs tweaking in light of [the First Step Act], that tweaking must be accomplished by the Commission, not by the courts." *Id*. at 4. "The Commission may well decide that, since BOP is no longer the gatekeeper regarding the filing of motions for compassionate release, neither should it be the gatekeeper regarding the residual category of extraordinary and compelling reasons for compassionate release" *Id*. "Until that day, however, the Court must follow the policy statement as it stands." *Id*.

The Court recognizes that these are unsettling times for prisoners. The Court, however, has no authority at this point to grant the defendant compassionate release.

For all these reasons, the Court **HEREBY ORDERS** that the defendant's motion for compassionate release (DE 420) is **DENIED** without prejudice.  If circumstances should change in a way that would permit the Court to find "extraordinary and compelling" reasons for reducing his sentence, he may file another motion.

Dated July 27, 2020.

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY

8